IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| THOMAS M. LAMEDICA, : | |
| : | |
| Plaintiff, : | |
| : | |
| VS. : | Civil Action File No. |
| : | 3 : 09-CV-65 (CDL) |
| MICHAEL J. ASTRUE, : | |
| Commissioner of Social Security, : | |
| : | |
| Defendant. : | |

**RECOMMENDATION**

The Plaintiff herein filed an application for disability insurance benefits on August 19, 2003, and an application for Supplemental Security Income benefits on September 12, 2003. Both claims alleged that disability began on August 17, 2003. Plaintiff was awarded Supplemental Security Income, but his date last insured for the disability insurance benefits was December 31, 2002, which was prior to his alleged onset date. Plaintiff subsequently amended his onset date to January 15, 2002, the date he last worked. This application for disability insurance benefits was denied initially and upon reconsideration, and the Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on April 24, 2007. At the hearing, Plaintiff again amended his onset date to January 1, 1997. In a decision dated June 19, 2007, the ALJ denied Plaintiff's claim for disability insurance benefits. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making it the final decision of the Commissioner. The Plaintiff subsequently filed an appeal to this court. Jurisdiction arises under 42 U.S.C. § 405(g). All administrative remedies have been exhausted. This case is now ripe for review under section 1631(c)(3) of the Social Security Act, 42 U.S.C. § 1383(c)(3).

DISCUSSION

In reviewing the final decision of the Commissioner, this court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In reviewing the ALJ's decision for support by substantial evidence, this court may not re-weigh the evidence or substitute its judgment for that of the Commissioner. "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. "In contrast, the [Commissioners'] conclusions of law are not presumed valid....The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

20 C.F.R. § 404.1520 (1985) provides for a sequential evaluation process to determine whether a claimant is entitled to Social Security disability benefits. The Secretary employs the following step-by-step analysis in evaluating a claimant's disability claims: (1) whether the claimant is engaged in gainful employment; (2) whether claimant suffers from a severe impairment which has lasted or can be expected to last for a continuous period of at least twelve months; (3) whether claimant suffers from any of the impairments set forth in the listings of impairments provided in Appendix 1; (4) whether the impairments prevent claimant from returning to his previous work; and (5) whether claimant is disabled in light of age, education, and residual functional capacity.

*Ambers v. Heckler*, 736 F.2d 1467, 1470-71 (11th Cir.1984). Should a person be determined disabled or not disabled at any stage of the above analysis, further inquiry pursuant to the analysis ceases. Accordingly, if a claimant's condition meets an impairment set forth in the listings, the claimant is adjudged disabled without considering age, education, and work experience. 20 C.F.R. § 404.1520(d).

The ALJ concluded that the Plaintiff had "severe" impairments of coronary artery disease; status post myocardial infarction in July of 1996, with multiple angioplasty procedures in July of 1996 and recurrent angioplasty/stenting procedures in November of 1998; and carpal tunnel syndrome of the right hand. However, the ALJ concluded that Plaintiff had the residual functional capacity to perform a full range of sedentary work activity from January 1, 1997, the alleged disability onset date, through December 31, 2002, the date his Title II insurance coverage status expired.

The medical evidence includes the following records: a letter from cardiologist Gaetano J. Capone, M.D., sent to the Plaintiff's primary care provider, Marianne Colvin, D. O., outlines the claimant's health situation as of February 26, 2001. "Catheterization performed by Dr. Mintz revealed the presence of borderline critical disease in the proximal anterior descending system at the site of previous angioplasty and stenting on the order of 60-65%. There was 80% disease in a small septal perforator, 50% disease in the mid anterior descending coronary artery. The anterior descending sent collaterals to a totally occluded right system. The circumflex gave off several posterolateral marginal ramifications. A moderate size one had 60-70% disease. Ventricular function was normal, save for an area of moderate proximal inferior wall hypokinesis. Ejection fraction was 58%." (Tr. 121). In March, 2000, the claimant had a left ventricular ejection fraction of 52%. (Tr. 132).

Plaintiff was seen again in March, 2001, to review recent stress echo (ECG) testing. The Plaintiff demonstrated 12.9 mets of activity with 11 minutes of exercise. However, he continued to report fatigue. (Tr. 123). The ECG test was performed by Betsie Figueroa-Cruz, M.D. The ECG test was considered inconclusive for ischemia as the target heart rate was not reached. The patient did not have chest pain during the test, but APCs (atrial premature contractions) and PVCs (premature ventricular contractions) were observed with stress and at rest. Although the patient reached 13 mets, he had to stop during the test due to fatigue. (Tr. 124-128).

Dr. Capone saw the Plaintiff again in November, 2000, noting that after the recent ECG test a few days before, the Plaintiff had began having symptoms and was seen in the Emergency Room. (Tr. 137). Dr. Capone described the Plaintiff's condition based on the ECG as "mild to moderate inferior wall ischemia at a low workload." *Id.* Dr. Capone's records describe the Plaintiff's complaints of fatigue. On March 23, 2001, the "patient continues to have some elements of fatigue which may be secondary to stress." (Tr. 123). In November, 2000, the notes state that "fatigue is his predominant symptomatology." (Tr. 140). The doctor stated that he could not determine whether the Plaintiff's fatigue was related to depression or "a type of anginal equivalency." (Tr. 141). In April, 2000, the Plaintiff reported continuing, increasing fatigue. (Tr. 145). On February 21, 2000, the Plaintiff reported increasing fatigue. (Tr. 146).

A Consultative Evaluation was performed on November 21, 2003, by Stephen Schacher, M.D. (Tr. 162-165). Dr. Schacher noted that the Plaintiff was being medicated with the following prescription drugs: 1) NTG 0.4 mg SL(nitroglycerin) as needed; 2) Isosorbide 10 mg; 3) Metaprolol 50 mg; 4) Ranitidine 150 mg; 5) Simvastatin 80 mg; 6) Clopidogrel 75 mg. R. 162. A family history of heart disease was noted, with both his father and grandfather dying at an early age of heart disease. *Id.*

Dr. Schacher reported that the Plaintiff wakes up during the night with chest pain and medicates with nitroglycerin. During the day he attempts household activity, but has to sit down and take nitroglycerin for chest pain after a brief effort. He gets chest pain after walking only a short distance, such as half a block. (Tr. 163). During the examination, he had chest pain with shortness of breath, and took nitroglycerin. (Tr.164). He has constant ringing in his ears, a loud, static sound. *Id.* He has acid reflux, and his medications irritate his stomach. *Id.* He suffers headaches 2-3 times a week. He has numbness and tingling in both arms, and stiffness in his hands. *Id.*

On examination, Dr. Schacher observed that the Plaintiff demonstrated full range of motion of the upper extremities, but this was very painful on the right side. His muscle strength on the right side is impaired proximally (4/5=mild weakness) and distally (3/5 moderate weakness). (Tr. 164). He observed that the Plaintiff has greatly reduced grip and pinch strength of his right compared with his left hand, the right hand being dominant. The Plaintiff had decreased fine motor function of the first two digits of his right hand; he was unable to feel and grasp small objects. However, it was felt that he could perform fine motor skills such as buttoning, tying shoes, zipping pants, and holding a pencil. (Tr. 157).

Dr. Schacher diagnosed the Plaintiff with class 3 cardiac disease. He found that the Plaintiff's "cardiac condition leaves him unable to withstand more than minimal physical activity without significant chest pain and marked shortness of breath." (Tr. 165). The Plaintiff was observed to become short of breath and have chest pain after ambulating only 50 feet. (Tr. 158).

The Plaintiff testified at his hearing that he was unable to work, other than sporadically, after his heart attack in July of 1996. (Tr. 20). The Plaintiff moved to Georgia in 2001 and attempted to work for a friend and on his own, however he had limited success and did not work after January of 2002. (Tr. 21). His earnings record corroborates his testimony. *Id.* The ALJ concluded that the

Plaintiff's period of work activity from the fall of 2001 until January 15, 2002 was an unsuccessful work attempt, based on SSR 84-25. (Tr. 22).

*Residual Functional Capacity*

Plaintiff argues that the ALJ's residual functional capacity assessment was not supported by substantial evidence because the ALJ failed to incorporate the "severe" impairment of carpal tunnel syndrome, which he found at Step Two, into his assessment of the Plaintiff's residual functional capacity. Residual functional capacity (RFC) is "the most you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

Plaintiff contends that this was a significant error, because of the nature of sedentary work. "Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions." Social Security Regulation 83-10.

The determination of RFC is an administrative assessment based on all the evidence of how Plaintiff's impairments and related symptoms affect his ability to perform work-related activities. SSR 96-5p. The regulations state that the final responsibility for assessing a claimant's RFC rests with the ALJ, based on all the evidence in the record. See 20 C.F.R. §§ 404.1527(e)(2), 404.1545(a)(3), 404.1546 (c), 416.927(e)(2), 416.945(a)(3), 416.946(c). Relevant medical and other evidence includes medical reports from treating and examining sources, medical assessments, and descriptions and observations of a claimant's limitations by the claimant, family, neighbors, friends, or other persons. See 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

According to 20 CFR 404.1520(c), a condition is a "severe" impairment if it significantly limits an individual's ability to perform basic work activities. Thus, the claimant's carpal tunnel syndrome of the right hand was considered to significantly limit the claimant's work ability. However, the ALJ did not incorporate this nonexertional impairment/limitation into the residual

functional capacity.

The ALJ used the grids to determine that Plaintiff could perform a full range of sedentary work during the relevant time period. The Medical-Vocational Guidelines or Grid Rules are a set of charts that direct a finding of "disabled" or "not disabled" based on a plaintiff's age, education, work skills, and exertional capacity. See 20 C.F.R. pt. 404, subpt. P, app. 2, Rule 200.00 et. seq. However, "[e]xclusive reliance on the grids is not appropriate either when claimant is unable to perform a full range of work at a given functional level or when a claimant has non-exertional impairments that significantly limit basic work skills." *Francis v. Heckler,* 749 F.2d 1562, 1566 (11th Cir.1985). The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation. *Smith v. Bowen,* 792 F.2d 1547, 1554 (11th Cir.1986); *see* 20 C.F.R. § 1416.969; 20 C.F.R. pt. 404, subpt. P, app. II § 200.00(a). The grids also may not be used when the claimant's non-exertional impairments are severe enough to preclude a wide range of employment at the level indicated by the exertional impairments. *Smith*, 792 F.2d at 1554; 20 C.F.R. pt. 404, subpt. P, app. II § 200.00(e). Non-exertional impairments include "postural and manipulative limitations, and must be considered in determining a claimant's residual functional capacity." 20 C.F.R. § 416.945(d).

Most unskilled sedentary jobs require good use of the hands and fingers for *repetitive* hand-finger actions. SSR 96-9p. In this case, there is the loss of bilateral manual dexterity due to the claimant's severe impairment of carpal tunnel syndrome in the right hand. The regulations accompanying the grids state that the "inability to perform jobs requiring bilateral manual dexterity significantly compromises" the range of sedentary work a claimant can perform. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.00(h). *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

The ALJ noted the Plaintiff's statements that he drops things, and cannot use his fingers to

7

push buttons. (Tr. 26). The ALJ found that the consultative evaluations dated November 2003 and March 2004 support the finding that the claimant's carpal tunnel syndrome is severe. *Id.* However, the ALJ found that "the record does not establish that the claimant experiences any significant grasping/handling limitations or any other carpal tunnel related restrictions that would preclude the essential range of sedentary work" *Id,* without discussing the Plaintiff's testimony regarding his limitations caused by the carpal tunnel syndrome, namely his inability to push buttons and the frequent dropping of items from his right hand.

When a plaintiff has non-exertional limitations, the ALJ should generally obtain testimony from a vocational expert to support the decision. *See Wolfe v. Chater*, 86 F.3d 1072, 1077-78 (11th Cir. 1996). The undersigned finds that the ALJ erred in applying the grids instead of obtaining the testimony of a vocational expert, and that the conclusion that Plaintiff could perform a full range of sedentary work was not based upon substantial evidence.

*Credibility*

Plaintiff states that the ALJ erred in assessing his credibility and subjective complaints of extreme fatigue. Plaintiff testified that since his first heart attack in July 1996, he had extreme daily fatigue (Tr. 342, 350).

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991), requires that an ALJ apply a three part "pain standard" when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. A claimant may establish that her pain is disabling through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce the pain.

20 C.F.R. S 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability. *Foote v. Chater*, 67 F.3d 1553,1560-1561 (11th Cir. 1995).

A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability. *Holt v. Sullivan*, supra at page 1223; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir.1987). Where the claimant's testimony is critical, the fact finder must articulate specific reasons for questioning a claimant's credibility. "[D]isregard of such complaints without articulating the reason is inappropriate because it deprives the reviewing court of the ability to determine the validity of that action. When rejecting the credibility of a claimant's testimony, an ALJ must articulate the grounds for that decision." *Caulder v. Bowen*, 791 F.2d 872, 880 (11th Cir.1986). The ALJ may consider the nature of a plaintiff's symptoms, the effectiveness of medication, a plaintiff's activities, and any conflicts between a plaintiff's statements and the rest of the evidence. See 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4).

Regarding the claimant's ability to perform work after his first heart attack, but prior to the second one (the relevant time period for this claim), the ALJ stated that "I find [the Plaintiff] to be highly credible," but noted that the Plaintiff was "attempting to do pretty heavy work - - - and couldn't hold out to do that. And I believe him totally." (Tr. 359). The ALJ went on to state that if the evidence demonstrated that the Plaintiff needed to sleep two or three hours a day, that would direct a finding of disabled. (Tr. 360).

In the decision, the ALJ found that the Plaintiff's medically determinable impairments could have been reasonably expected to produced the alleged symptoms, but that the Plaintiff's statements

9

concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

The ALJ appears to have considered the fact that Plaintiff's cardiologist found in March of 2001 that Plaintiff's cardiac stress was stable and only showed a Class 1 rating, indicating that the patient has no symptoms with ordinary physical activity. (Tr. 25). However, the ALJ concluded that the extensive cardiac testing showed that Plaintiff could perform sedentary work (Tr. 26), despite Plaintiff's complaints of severe fatigue, the need to take frequent naps, and the ability to perform light household chores only for 2 to 3 hours at a time.

The ALJ detailed the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p; however he did not specify how the analysis of these types of evidence in *this* case resulted in finding the Plaintiff less than credible.

SSR 96-7p specifically states that:

It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p.

As pointed out by Plaintiff, the ALJ stated during the hearing that he found the claimant to be credible, and that if the Plaintiff needed 2-3 hours of sleep during the work day, that would lead to a finding of disabled. (Tr. 359-360). However, in the decision, the ALJ failed to specify what testimony he found credible, in determining that Plaintiff was unable to perform strenuous work, but not credible in finding that he could perform a full range of sedentary work. This includes Plaintiff's testimony that he was unable to manipulate buttons on an alarm clock and frequently

10

dropped items when using his right hand, and his extreme fatigue that required him to sleep 2-3 hours during the day.

The undersigned finds that the ALJ erred in failing to articulate the reasons for finding Plaintiff less than credible; consequently, the ALJ's decision to discount the testimony of Plaintiff was not based upon substantial evidence.

*Conclusion*

Inasmuch as the Commissioner's final decision in this matter is not supported by substantial evidence, it is RECOMMENDATION of the undersigned that the Commissioner's decision be **REVERSED AND REMANDED** pursuant to Sentence Four of § 405 (g) for further consideration in light of this opinion. Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this recommendation with the Honorable Clay D. Land, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy.

**SO RECOMMENDED**, this 12th day of August, 2010.

S//Thomas Q. Langstaff
THOMAS Q. LANGSTAFF
UNITED STATES MAGISTRATE JUDGE

msd